**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| THE ESTATE OF E. WAYNE HAGE AND ESTATE OF JEAN N. HAGE,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 91-1470L<br><br>Senior Judge Loren Smith |

**MOTION OF AMICI CURIAE NEVADA DEPARTMENT OF WILDLIFE, ET AL., TO FILE A SUPPLEMENTAL MEMORANDUM REGARDING THE FEDERAL CIRCUIT'S DECISION IN COLVIN CATTLE COMPANY**

Pursuant to RCFC 15(d), amici[1] respectfully request that they be allowed to file the attached SUPPLEMENTAL MEMORANDUM OF AMICI CURIAE NEVADA DEPARTMENT OF WILDLIFE, ET AL., REGARDING THE FEDERAL CIRCUIT'S DECISION IN COLVIN CATTLE.

As grounds for this motion, amici state as follows:

1. The recent decision of the U.S. Court of Appeals for the Federal Circuit in Colvin Cattle Company v. United States, No. 06-5012 (filed November 1, 2006), is an important precedent governing the resolution of this case. In its Notice of Supplemental Authority, the United States pointed out that this decision resolves the issue of whether an appropriative water right includes a right to graze on public lands, and whether plaintiffs possess a viable claim for compensation under 43 U.S.C. § 1752(g). However, amici submit that the decision also supports

[1] Amici are the Nevada Department of Wildlife, the National and Nevada Wildlife Federations, the Natural Resources Defense Council, and the Toiyabe Chapter of the Sierra Club.

rejection of all of the other remaining claims in this case, including the claim that plaintiffs suffered a taking of an alleged right to graze livestock within a 50-foot right of way on either side of the ditches they utilize, the claim that the government's land management decisions effected a taking of their water rights, and the claim that the government effected a taking by cooperating in the introduction of elk to the Toiyabe National Forest. The proposed memorandum addresses how the ruling and analysis in Colvin Cattle relates to each of these claims and should assist the Court in resolving this case.

2. Plaintiffs will not be prejudiced by granting this motion. Given that this litigation has already been pending for well over a decade, plaintiffs will not be prejudiced by the slight additional delay required to carefully consider whether Colvin Cattle may finally and definitively dispose of this case. Plaintiffs should, of course, be granted an opportunity to respond to the proposed memorandum.

Date: January 4, 2007

Respectfully submitted,

(/s/______________________________________

Johanna H. Wald, COUNSEL OF RECORD
Natural Resources Defense Council
111 Sutter Street, 20th floor
San Francisco, California 94104
415/875-6100; 415/875-6161 (fax)

Thomas D. Lustig
National Wildlife Federation
2260 Baseline Road, Suite 100
Boulder, Colorado 80302
303/441-5158; 303/786-8911 (fax)

**Attorneys for *Amici Curiae* Nevada Department of Wildlife, National and Nevada Wildlife Federations, Natural Resources Defense Council, and the Toiyabe Chapter of the Sierra Club**

Of Counsel:

John Echeverria
Georgetown Environmental Law & Policy Institute
Georgetown University Law Center
600 New Jersey Ave., NW
Washington, D.C. 20001

Professor Joseph Feller
College of Law
Arizona State University
Tempe, AZ 85287-7906

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE ESTATE OF E. WAYNE HAGE AND ESTATE OF JEAN N. HAGE, | ) | No. 91-1470L |
| Plaintiffs, | ) | |
| v. | ) | Senior Judge Loren Smith |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL MEMORANDUM OF AMICI CURIAE NEVADA DEPARTMENT OF WILDLIFE, ET AL., REGARDING THE FEDERAL CIRCUIT'S DECISION IN COLVIN CATTLE COMPANY**

Amici[1] respectfully submit this supplemental memorandum to assist the Court in evaluating the relevance of the decision of the U.S. Court of Appeals for the Federal Circuit in Colvin Cattle Company v. United States, No. 06-5012 (filed November 1, 2006), to the proper resolution of the issues in this case.[2]

As the United States has explained in its Notice of Supplemental Authority, the Federal Circuit's decision in Colvin Cattle supports rejection of plaintiffs' theory that their appropriative water rights include a right to graze cattle on public lands and, therefore, mandates rejection of their legal claim that the government's regulation of use of the public range effected a taking. As the Federal Circuit explained, "any water right that [plaintiff] or its predecessors obtained could not and did not include an attendant right to graze on public lands," slip op. at 6, and therefore

[1] Amici are the Nevada Department of Wildlife, the National and Nevada Wildlife Federations, the Natural Resources Defense Council, and the Toiyabe Chapter of the Sierra Club.

[2] On December 14, 2006, Appellants/Plaintiffs filed a MOTION FOR PANEL REHEARNG AND PETITION FOR REHEARING EN BANC with the Federal Circuit, which has yet to rule on their request.

"no governmental action restricting [plaintiff's] ability to graze on federal land can affect its water right in a manner cognizable under the Fifth Amendment." Slip op. at 7. The United States also has explained that the Federal Circuit's conclusion in Colvin Cattle that plaintiffs' claim for recovery under 43 U.S.C. § 1752(g) was not ripe supports rejection of plaintiffs' claim under the same provision in this case.

In addition, however, amici submit that the decision in Colvin Cattle also supports rejection of the other claims in this case. As amici discuss below, the decision in Colvin Cattle supports rejection of (1) the claim that plaintiffs' asserted ditch rights include a right to graze cattle within a ditch right of way, (2) the claim that the government's land management decisions on the public domain effected a taking of water rights by reducing water flows to plaintiffs' property, and (3) the claim that the federal government effected a taking by cooperating with state officials in introducing elk to the Toiyabe National Forest. The amici discuss each of these points below.

## I. Colvin Cattle supports rejecting plaintiffs' claim that they have a right to graze livestock within a 50-foot right of way.

The Court in Colvin Cattle reaffirmed the longstanding proposition that "[t]he United States can prohibit absolutely or fix the terms on which its property may be used." Slip Op. at 5, quoting Light v. United States, 220 U.S. 535, 536 (1911). A well-established corollary of this principle is that grants of permission to use public lands must be "construed favorably to the Government, that nothing passes except what is conveyed in clear language, and that if there are doubts they are resolved for the Government, not against it." United States v. Union Pacific Railroad, 353 U.S. 112, 116 (1957). These principles, combined with the Federal Circuit's holding that water rights do not include an appurtenant right to graze public lands, render untenable this Court's unprecedented suggestion in prior rulings in this case that plaintiffs' ditch

rights recognized under the 1866 Mining Act include a right to graze cattle within a 50-foot right of way on each side of the ditch. Neither common sense nor the law supports this position. We take this opportunity to set forth in comprehensive fashion why, in light of Colvin Cattle, this position should be rejected.

A. Sensible Federal Land Policy. First, plaintiffs' position regarding ditch rights is simply implausible in view of the Federal Circuit's conclusion, in line with the conclusions of every other circuit court to address the issue, that appropriative water rights do not include a general right to graze cattle on public lands. It would have been nonsensical for Congress to have declined to create vested private rights in the public range generally, but to have created such rights in narrow rights of way stretching across public lands. See Post-Trial Brief of Amici Nevada Department of Wildlife et al. at 19-20 [Docket No. 267] (explaining that the asserted grazing rights associated with ditch rights in this case would support at most one or two cows).

B. Statutory Language. Equally important, the language of the Mining Act does not support the notion that a right of way includes a right to graze. The statute "acknowledge[s] and confirm[s]" a right of way "for the construction of ditches and canals." 43 U.S.C. § 661. This language grants rights to create and maintain ditches and canals for the purpose of conveying water from point A to point B, and contains no indication, much less a clear indication, that the grant includes rights to the use of the land for other purposes, such as grazing. See Post-Trial Brief of Amici Nevada Department of Wildlife et al. at 18 [Docket No. 267] (explaining that the rule of strict construction precludes the inference of a forage right appurtenant to a ditch right of way). Significantly, every reported decision of which we are aware to address this specific issue has read this language as solely recognizing rights of way for water transport. Thus, in Hunter v. United States, 388 F.2d 148 (9th Cir. 1967), the Court rejected the claim that a ditch right of way

includes an accompanying easement to graze livestock, observing that this provision grants only a "right of way for ditches and canals needful to conduct appropriate water from the public domain." Id. at 154. See also Utah Light & Traction Co. v. United States, 230 F. 343, 346 (8th Cir. 1915) (concluding that a Mining Act ditch right was limited to facilities "constructed for the storing and transmission of the water itself").

C. Legislative History. Furthermore, the legislative history of the Mining Act refutes the idea that a ditch right of way "acknowledged" by the Mining Act of 1866 includes a 50-foot right of way available for grazing purposes. The House of Representatives's original version of the Mining Act did include a provision granting ditch owners rights to 50 feet on either side of the ditch. Cong. Globe, 39th Cong., 1st Sess. 3141 (1866). But the Senate version of the legislation did not include a similar provision, and the final bill adopted the Senate's approach. See Hage v. United States, 51 Fed Cl. 570, 582 (2002). Following the usual rules of legislative interpretation, the fact that Congress explicitly considered language establishing a 50-foot right of way, but then rejected it, provides decisive evidence that Congress did not implicitly adopt the proposal. See Secretary of the Interior v. California, 464 U.S. 312, 330 (1984) (holding that a Senate-House compromise resulting in the exclusion of House language demonstrated that Congress intended to reject the House proposal). Furthermore, the proposal that Congress considered was for a right of way for the limited purpose of facilitating "repairs and construction." Cong. Globe, 39th Cong. 1st Sess. 3141 (1866). Indeed, the House bill said that "the use and occupation hereby granted shall be for the purpose named and no other." See id. Thus, even if the Congress had embraced the House approach, the resulting legislation still would not have supported a 50-foot right of way for grazing purposes.

D. Other Considerations Regarding Federal Law. The Court previously identified three

other considerations that ostensibly support the conclusion that ditch rights of way include a vested right to graze in public lands. See Hage v. United States, 51 Fed. Cl at 581; see also Hage v. United States, 42 Fed. Cl. 249, 250-51 (1998). Amici respectfully submit that, particularly in light of the appeals court ruling in Colvin Cattle, the proffered considerations do not support such an expansive interpretation of the Mining Act.

First, the Court referred to the fact that Congress specified a 50-foot right of way in other public lands statutes, and reasoned that these laws support the inference that a 50-foot right of way should be read into the Mining Act. But the logic more naturally proceeds in the opposite direction, that is, the fact that the Mining Act, unlike these other laws, does not expressly refer to a 50-foot right of way tends to support the conclusion that the Mining Act was not intended to create a 50-foot right of way. Furthermore, none of these other laws supports the conclusion that the Mining Act granted a right to graze within the right of way, because none of the other laws suggests that Congress intended for water to be consumed inside a right of way. See Post-Trial Brief of Amici Nevada Department of Wildlife et al. at 19-20 [Docket No. 267] (discussing these other laws).

Second, evidence of "the historic use of these ditches for livestock watering and irrigation," Hage, 51 Fed. Cl. at 581, does not support the inference that the Mining Act was designed to create a vested right to graze in the rights of way. There is no dispute that the public lands, historically, have been used extensively for cattle grazing purposes. If long-term, historic usage of the public range for cattle grazing were sufficient to create private right in public lands, then Colvin Cattle would have had to be decided differently. But, as the Supreme Court has stated over and over again, customary ranching practices on the public range are insufficient as a matter of law to establish private property rights in the public range. See Omaechevarria v. State

of Idaho, 246 U.S. 343, 352 (1918); Light v. United States, 220 U.S. 523 (1911).

Finally, Congress's intent to "respect and protect the historic and customary usage of the range," Hage, 51 Fed. Cl. at 581, Hage, 42 Fed. Cl. at 251, does not support plaintiffs' claim to private rights in the portion of the public range subject to ditch rights. Congress's intent in this regard can readily be implemented without creating private property rights in the public lands. From the Unlawful Inclosures of Public Lands Act of 1885, see 43 U.S.C. § 1061, to the Federal Land Policy and Management Act of 1976, see 43 U.S.C. § 1701, Congress has recognized that grazing is a legitimate and valuable use of public lands under the policy of multiple use. Use of the public lands for grazing purposes, in appropriate locations and subject to appropriate conditions, can and will continue even if plaintiffs' private property rights theory is rejected. See generally Jeffrey J. Wechsler, *This Land is Our Land: Ranchers Seek Private Rights in Public Rangelands*, 21 J.Land Resources & Envtl. L. 461, 474 (2001).

D. State Law. There is also no basis in Nevada law for believing that a right of way includes a right to graze cattle. In a prior opinion, this Court observed, "The Act's legislative history shows that Congress believed that Western water and easements law generally allowed a right-of-way for 50 feet on both sides of a ditch." See Hage, 51 Fed. Cl. at 581. More specifically, the Court referred to a statement made by the sponsor of the House bill, who proposed to add language that would have established a 50-foot right of way, to the effect that the proposal "was simply a codification of pertinent state and local law in the Pacific States: 'We propose, in the bill as amended, that they shall have the right of way as they now have, respecting at the same time the rights of possession as established by the laws of the State.' 1866 Cong. Globe 3141 (June 13)." Id. at 582. This Court opined, based on this evidence, that, "The dimensions used in the House's version of the bill demonstrate Congress understood and

accepted the local law and custom when it drafted, debated and passed the 1866 Act." Id. But, with respect, amici submit that this statement by the amendment sponsor cannot be treated as authoritative, given that it represents a federal legislator commenting on state law, in the context of making a self-serving argument that his proposal would not alter existing law, and, most importantly, in support of an amendment that the Congress as a whole rejected.

Equally important, there is no support in Nevada law itself for the view that a ditch right of way includes a right to graze cattle. The Federal Circuit in Colvin Cattle emphasized that the Nevada Supreme Court has repeatedly stated that Nevada law does not create any vested rights in the public range. See Slip op. at 7, citing In re Calvo, 253 P. 671, 675 (Nev. 1927) and Itcaina v. Marble, 55 P.2d 625, 629-30 (Nev. 1936). We know of no Nevada authority suggesting that the same rule does not apply to rights of way across federal public lands. In addition, Nevada follows the general rule that easements across the property of another must be narrowly construed, a rule that would plainly be violated by treating ditch rights of way as including a private right to graze cattle within the right of way. See S.O.C., Inc. v. Mirage Casino-Hotel, 23 P.3d 243, 247 (Nev. 2001) ("easements are construed strictly in favor of the owner of the property" and "only as broad[ly] as needed to achieve the intended result").

For all the foregoing reasons, this Court should conclude that a forage right is not appurtenant to plaintiffs' ditch rights of way.[3]

---

[3] As the amici have previously explained, because the asserted right to graze within a ditch right of way is economically valueless, even if a forage right were appurtenant to a ditch right of way, plaintiffs have failed to demonstrate that restrictions on this asserted right amounted to a compensable taking. See Post-Trial Brief of Amici Nevada Department of Wildlife et al. at 19-21 [Docket No. 267].

**II. Colvin Cattle supports rejecting plaintiffs' claim that that the government's land management decisions on the public domain effected a taking of water rights by reducing water flows to plaintiffs' property.**

The statement in Colvin Cattle that "[t]he United States can prohibit absolutely or fix the terms on which its property may be used," slip op. at 5, also supports rejection of plaintiffs' claim that federal officials' land management decisions effected a taking of plaintiffs' property rights by reducing water flows onto their private lands. See Post-Trial Brief of Amici Nevada Department of Wildlife et al. at 21-29 [Docket No. 267] (refuting the factual and legal basis for this claim in detail). In particular, this statement in Colvin Cattle can properly be taken to contradict the suggestion that the federal government had some obligation to permit grazing on public lands in order to maximize water flow to plaintiffs' downstream private lands.

**III. Colvin Cattle supports rejecting plaintiffs' claim that the federal government effected a taking by cooperating with state officials in introducing elk to the Toiyabe National Forest.**

Finally, the Court's ruling in Colvin Cattle that the government cannot be held liable for a taking as a result of alleged damage to plaintiff's water rights caused by protected wild horses supports rejection of plaintiffs' claim in this case that federal officials effected a taking by cooperating with state game officials in introducing elk to the Toiyabe National Forest. In support of this ruling the Federal Circuit cited the leading case of Mountain States Legal Foundation v. Hodel, 799 F.2d 1423 (10th Cir. 1986) (en banc), which states, "Of the courts that have considered whether damage to private property by protected wildlife constitutes a 'taking,' a clear majority have held that it does not and that the government thus does not owe compensation." Id. at 1428-29. Mountain States is consistent with other precedents of the Federal Circuit recognizing that government regulations protecting the sovereign interest in wildlife cannot give rise to takings liability. See, e g., American Pelagic Fishing Co., LLP v.

United States, 379 F.3d 1363, 1379 (Fed. Cir. 2004); Bishop v. United States, 126 F. Supp. 449 (Ct. Cl. 1954).

Significantly, the Court in Colvin Cattle applied this principle despite the fact that the wild horses at issue in that case were introduced to North America. See Bruce J. MacFadden, "Evolution: Fossil Horses–Evidence for Evolution." Science, vol. 307, pp. 1728 - 1730 (March 18, 2005) ("Horses became extinct in North America about 10,000 years ago, and were subsequently reintroduced by humans during the 16th century."). In so ruling, the Federal Circuit followed other appellate courts in holding that alleged property damage caused by introduced wild animals cannot support a takings claim. See Post-Trial Brief of Amici Nevada Department of Wildlife et al. at 35-36 [Docket No. 267] (discussing relevant precedent).

CONCLUSION

For the foregoing reasons, and for the reasons previously presented by the United States and amici, we urge this Court to enter judgment for the United States on all claims.

Date: January 4, 2007 Respectfully submitted,

/s/
Johanna H. Wald, COUNSEL OF RECORD
Natural Resources Defense Council
111 Sutter Street, 20th floor
San Francisco, California 94104
415/875-6100; 415/875-6161 (fax)

Thomas D. Lustig
National Wildlife Federation
2260 Baseline Road, Suite 100
Boulder, Colorado 80302
303/441-5158; 303/786-8911 (fax)

**Attorneys for *Amici Curiae* Nevada Department of Wildlife, National and Nevada Wildlife Federations, Natural Resources Defense Council, and the Toiyabe Chapter of the Sierra Club**

Of Counsel:

John Echeverria
Georgetown Environmental Law & Policy Institute
Georgetown University Law Center
600 New Jersey Ave., NW
Washington, D.C. 20001

Professor Joseph Feller
College of Law
Arizona State University
Tempe, AZ 85287-7906

**CERTIFICATE OF SERVICE**

I certify that on January 4, 2007, in addition to electronically filing the attached documents, I served the following individual with copies of the attached MOTION OF AMICI CURIAE NEVADA DEPARTMENT OF WILDLIFE, ET AL., TO FILE A SUPPLEMENTAL MEMORANDUM REGARDING THE FEDERAL CIRCUIT'S DECISION IN COLVIN CATTLE COMPANY, and SUPPLEMENTAL MEMORANDUM OF AMICI CURIAE NEVADA DEPARTMENT OF WILDLIFE, ET AL., REGARDING THE FEDERAL CIRCUIT'S DECISION IN COLVIN CATTLE COMPANY, by placing a copy in first class mail addressed as follows:

Michael Wolz
Nevada Attorney General's Office
100 North Carson Street
Carson City, Nevada 89701-4717

________________________________