IN THE UNITED STATES COURT OF FEDERAL CLAIMS

THE ESTATE OF E. WAYNE HAGE AND THE ESTATE OF JEAN N. HAGE,

Plaintiffs,

vs.

UNITED STATES OF AMERICA,

Defendant.

____________________________________/

Case No. 91-1470 L

Senior Judge Loren Smith

**RESPONSE TO SUPPLEMENTAL MEMORANDUM OF AMICI CURIAE NEVADA DEPARTMENT OF WILDLIFE, ET AL. REGARDING THE FEDERAL CIRCUIT'S DECISION IN COLVIN CATTLE COMPANY**

Lyman D. Bedford
MCQUAID BEDFORD & VAN ZANDT LLP
221 Main Street, 16th Floor
San Francisco, CA 94105
Telephone: (415) 905-0200
Facsimile: (415) 905-0202
Attorney of Record for the Hage Plaintiffs

Michael J. Van Zandt
Of Counsel

## I. INTRODUCTION

Amici have filed a supplemental memorandum which urges this Court to hold that decision of the U.S. Court of Appeals for the Federal Circuit in Colvin Cattle Company v. United States is dispositive of the instant case. However, on December 14, 2006, Colvin Cattle Company (Colvin) filed a Motion for Panel Rehearing and Petition for Rehearing En Banc with the Federal Circuit, which has ordered the United States to file a responsive brief. Colvin was decided on a motion to dismiss. Hage has a full trial record.

More importantly, in many ways Hage v. United States is factually distinguishable from Colvin Cattle Company v. United States. As will be discussed at length below, the decision in Colvin is not dispositive of Hage.

## II. THE ACTS OF TAKING IN COLVIN ARE FAR DIFFERENT FROM THOSE IN HAGE

As stated in their opinion, the Court of Appeals for the Federal Circuit noted that the Bureau of Land Management (BLM) granted Colvin a grazing lease in 1970. In February of 1995 Colvin failed to pay the annual grazing fee because the BLM made it impossible for Colvin to graze on its allotment. Ultimately Colvin's lease was cancelled and trespass damages were assessed. The appellate court in Colvin noted that although Colvin may no longer access the allotment for grazing purposes, the government has not impeded its access to water. These, however, were facts disputed by Colvin.

In Hage, there were numerous acts of both regulatory and physical takings, which resulted in the Hages' loss of their property rights. These acts on the part of the United States are detailed

in plaintiffs' Post Trial Brief, pps. 4-7, detailed in plaintiffs' Post Trial Reply Brief, pps. 7-11, and will not be reiterated in detail here. In summary, these actions included, but were not limited to, placing non-indigenous elk on Table Mountain; fencing off spring sources on the Table Mountain and Meadow Canyon allotments, which precluded plaintiffs' livestock from water owned by plaintiffs, as well as from the adjacent forage; the Forest Service directing unreasonable and numerous complaints to the Hages with respect to Hages' cattle operation on Table Mountain, which had a serious economic impact on the livestock operation of the Pine Creek Ranch; following Forest Service policies allowing a proliferation of willows and other riparian growth, in streams and ditches owned by plaintiffs; engaging in threats of prosecution and actual criminal prosecution of Wayne Hage concerning maintenance of the plaintiffs' ditches which convey water to their irrigated pastures; suspension of 20% of the allotted cattle numbers on Table Mountain and permanent cancellation of 25% of the permitted numbers, an action admittedly taken to punish Mr. Hage; and excluding the Hages' cattle from the Meadow Canyon allotment and then impounding those cattle which drifted across a twenty-five mile, largely unfenced boundary, despite the Hages' efforts to prevent this result.

Once the Hages' herd was sold, an event caused by the acts of the United States, plaintiffs were compelled to take non-use of all grazing allotments. In late 1994, the Forest Service made a decision to cancel 100% of the cattle numbers permitted on the Table Mountain Allotment for failure to stock that allotment with livestock following three consecutive seasons of non-use and cancel 100% of the cattle numbers permitted on the Monitor East and West allotments for failure to stock the allotments without approved non-use. Of course, following 1991, plaintiffs had no

cattle with which to stock the allotments.

On May 16, 1997, the BLM notified the Hages in writing that they would not be issued a term grazing period for the Ralston and Monitor allotments. The new term permit which the BLM had offered to the Hages required that the allotments be stocked with large numbers of cattle and that the Hages maintain the range improvements located on the Ralston and Monitor allotments. However, as Mr. Hage testified at trial, he did not have the cattle to stock his allotments as required by the BLM and did not have the ability to borrow money to buy cattle. Furthermore, he did not have the financial resources in 1997 to maintain the range improvements on these allotments.

It is far different from the circumstances in Colvin, where the grazing lease was cancelled because of Mr. Colvin's failure to pay the grazing fee. There is no evidence that the Hages failed to pay their grazing fees.

## III. NOTHING IN COLVIN COMPELS THE CONCLUSION THAT THE HAGES DO NOT HAVE A RIGHT TO GRAZE LIVESTOCK WITHIN FIFTY FEET ON EITHER SIDE OF THEIR 1866 ACT DITCHES

As this Court is well aware, plaintiffs have not only claimed a right to forage within 50 feet on either side of their 1866 Act ditches, but it is the contention of plaintiffs that grazing rights are linked to the plaintiffs' water rights located throughout the Pine Creek Ranch. Plaintiffs submit that the appellate court in Colvin misapprehended the nature of the property rights on federally administered lands that are involved. The Light v. U.S. line of cases relied on by the appellate court in Colvin involved claims to some compensable right that are created as against the government after the public lands have been withdrawn. Light v. U.S., 22 U.S. 523

(1911). Light never asserted that he had established any vested property rights in the federal lands before they were reserved. The difference in both Colvin and Hage is that their rights were established before withdrawal and are thus governed by the estate of affairs defined before Light would apply. The Court of Appeals misconstrued the nature of these rights and failed to consider the impact that Buford v. Houtz, 133 U.S. 320 (1890) and Curtin v. Benson, 222 U.S. 98 (1911), have on pre-withdrawal rights. The Hages' rights are defined at the time of withdrawal, a line of cases that diverges from Light. Distinct from Light and its progeny, the Hage case specifically aligns with Buford v. Houtz, supra, and Curtin v. Benson, supra. Because both the Hage and Colvin rights flow, not from an implied license, but rather from a direct grant of congressional authority and the Mining Act of 1866, the Light line of authority does not apply. Curtin was decided in the same year that Light was and arrived at the completely opposite conclusion that a claim of vested property rights, even within a national park, could not be defeated by regulatory authority of the United States that prevented their use. Thus, where vested property rights are asserted, the Supreme Court has upheld them against an attempt by the United States to deny their use.

## IV. THE DECISION IN COLVIN IS NOT DISPOSITIVE OF THE CLAIM THAT ACTS OF THE UNITED STATES EFFECTED A TAKING OF THEIR IRRIGATION WATER RIGHTS BY REDUCING WATER FLOWS TO THE PATENTED LANDS

In their Supplemental Memorandum, amici argue that the statement in Colvin that United States can prohibit absolutely or fix the terms on which its property may be used is dispositive of the Hages' claim that the federal official's land management decisions effected a taking of

plaintiffs' property rights by reducing water flows onto their private lands.[1] This simplistic statement ignores the fact that the evidence introduced at trial showed a drastic diminution of the flow of irrigation water to the plaintiffs' irrigated patented pastures as a result of a proliferation of willows and other riparian vegetation, coupled with the actions of the United States which prevented the plaintiffs from maintaining their 1866 Act ditches. Not only had the United States threatened the plaintiffs with prosecution, plaintiff E. Wayne Hage was indeed prosecuted by the United States as a result of his efforts to maintain his irrigation ditches. Of all of the water rights found to be owned by the plaintiffs, the vast majority of those rights were their irrigation water, the flow of which to the plaintiffs' irrigated patented pastures has been drastically reduced by the actions of the United States. There was no irrigation water issues in Colvin and to cite a statement by the Court of Appeal in Colvin in support of the proposition that the United States can do whatever it wants with respect to water and ditches owned by the plaintiffs, does not support an adverse disposition of the plaintiffs' claim that their irrigation water rights have been taken.

---

[1] This statement by the appellate court was apparently based on the plenary authority given to the United States under the Property Clause. The Congress may determine how the public lands may be administered and "may constitutionally limit the disposition of the public domain in a manner consistent with its views of public policy." United States v. City and County of San Francisco, 310 U.S. 16, 29-30 (1940). The Hages, through their predecessors-in-interest have established vested property rights under Nevada law that have been confirmed by the United States under the Mining Act of 1866. The Hages private property rights within the allotments are appurtenant to the Pine Creek Ranch, are no longer public lands and thus fall outside the regulatory authority of the Property Clause. Public lands do not include land to which claims or rights of others have attached. Bardon v. Northern Pac. R. Co. 145 U.S. 535, 538 (1982).

To hold that the Property Clause would permit the United States to interfere with the flow of water through plaintiffs 1866 Act Ditches, with impunity and suffer no consequences, would render the protections of the Mining Act of 1866 meaningless. 43 U.S.C. §661. It would also render as superfluous the savings clauses in the Taylor Grazing Act, 43 U.S.C. §315, 315(b) and the savings clause in the Federal Land Policy Management Act, 43 U.S.C. §1752(h). The Hages' (as well as the Colvins') rights flow from the Mining Act of 1866 and are defined "by the local laws, customs and decisions of courts" and the "possessors and owners of such rights shall be maintained and protected in the same . . ." Id. 43 U.S.C. §661.

## V. THE HOLDING IN COLVIN WITH RESPECT TO WILD HORSES IS NOT DISPOSITIVE OF PLAINTIFFS' CLAIMS CONCERNING THE ACTIONS OF THE UNITED STATES AND THE STATE OF NEVADA IN PLANTING NON-INDIGENOUS ELK ON THE TABLE MOUNTAIN ALLOTMENT

Amici urge that Colvin is dispositive of the Table Mountain elk claims and refer to the holding in Mountain States Legal Foundation v. Hodel 799 F.2d 1423 (10th Cir. 1986) which held that damage to private property by protected wildlife does not constitute a taking. However, the plaintiffs' claims with respect to the introduction of the 50 non-indigenous elk into the Table Mountain allotment in 1979, without the Hages' knowledge or consent, not only resulted in damage to range improvements on the Table Mountain allotment, necessary for livestock operations there, but also made it impracticable to conduct livestock raising operations on that allotment due to access issues, hunting and the competition for food and water with the plaintiffs' livestock by the elk.

The appellate court in Colvin, emphasized that neither the states nor the federal government has title to these "creatures" until they are reduced to possession by "skillful capture." Indeed, that is exactly what happened in Hage. Non-indigenous elk were captured in another area of the country by the governmental authorities and transported to the Table Mountain allotment, where they were released and allowed to proliferate. The appellate court in Colvin noted that because wild horses are outside the government's control, they cannot constitute an instrumentality of the government capable of giving rise to a taking.[2] Indeed, the elk were reduced to governmental possession by "skillful capture" under the control of the government and were planted on the Table Mountain allotment, resulting in severe consequences to the Hage livestock operation there.

## VI. THE DECISION IN COLVIN IS NOT DISPOSITIVE OF PLAINTIFFS' CLAIMS FOR COMPENSATION UNDER 43 U.S.C. §1752(g)

In Colvin, the appellate court held that the claim for compensation under 43 U.S.C. §1752(g) was not ripe for failure to exhaust administrative remedies, i.e., Colvin did not request a determination by the Secretary of the value of the improvements as required by statute. What the Colvin decision apparently ignores is the fact that there were apparently no procedures that have been established either by the Department of Agriculture and/or the Department of the Interior to implement the provisions of 42 U.S.C. §1752(g). As pointed out by plaintiffs in their Post Trial Reply Brief, pps 18-19, the record is totally devoid of any evidence presented by the

---

[2] Since there was no trial in Colvin, whether the wild horses and burros in that case were reduced to governmental possession by "skillful capture" is unknown.

defendant that any procedures were in effect to adjudicate and pay claims under 43 U.S.C. §1752(g).

## VII. CONCLUSION

Plaintiffs respectfully submit that the appellate decision in Colvin is not dispositive of the issues to be decided in Hage and that this Court is not bound by Colvin in determining these issues.

DATED: January 29, 2007

Respectfully submitted,

By:______________________________

Lyman D. Bedford
**McQUAID BEDFORD & VAN ZANDT LLP**
221 Main Street, 16th Floor
San Francisco, CA 94105
Telephone: (415) 905-0200
Facsimile: (415) 905-0202
Attorney of Record for the Hage Plaintiffs

Michael J. Van Zandt
Of Counsel

**CERTIFICATE OF SERVICE**

At the direction of the Attorney of Record or his designee, on the date designated below, I served the within **RESPONSE TO SUPPLEMENTAL MEMORANDUM OF AMICI CURIAE NEVADA DEPARTMENT OF WILDLIFE, ET AL., REGARDING THE FEDERAL CIRCUIT'S DECISION IN COLVIN CATTLE COMPANY** on the interested parties in this action, as follows:

Michael Wolz
Nevada Attorney General's Office
100 North Carson Street
Carson City, NV 89701-4717

by first class mail

Dated: January 29, 2007

Teresa Bechelli

Teresa Bechelli