IN THE UNITED STATES COURT OF FEDERAL CLAIMS

THE ESTATE OF E. WAYNE HAGE AND THE ESTATE OF JEAN N. HAGE,

Plaintiffs,

vs.

UNITED STATES OF AMERICA,

Defendant.

_______________________________________/

Case No. 91-1470 L

Senior Judge Loren Smith

**RESPONSE TO SUPPLEMENTAL MEMORANDUM OF AMICI CURIAE NEVADA DEPARTMENT OF WILDLIFE, ET AL. REGARDING THE DECISION OF THE U.S. COURT OF FEDERAL CLAIMS IN CASITAS MUNICIPAL WATER DISTRICT V. UNITED STATES**

Lyman D. Bedford
MCQUAID BEDFORD & VAN ZANDT LLP
221 Main Street, 16th Floor
San Francisco, CA 94105
Telephone: (415) 905-0200
Facsimile: (415) 905-0202
Attorney of Record for the Hage Plaintiffs

Michael J. Van Zandt
Of Counsel

# I. INTRODUCTION

Amici have filed a Supplemental Memorandum bringing the Court's attention to the decision in *Casitas Municipal Water District v. United States*. Amici conclude that *Casitas* provides support for the conclusion that this court should enter judgment against plaintiffs on all claims. As will be discussed below, *Casitas* is factually different from Hage, is not binding precedent and certainly is not dispositive of the issues in Hage.

## FACTUAL BACKGROUND

In *Casitas*, plaintiff contended that the United States imposed restrictions on water diversion that required plaintiff to forgo the exercise of a right to divert up to an additional 3,200 acre-feet of water per year for irrigation purposes. These restrictions were imposed by the United States under the Endangered Species Act.[1] The facts in the instant case are far different.

The interference with the Hages' water rights by the United States took a variety of forms, many of which were in the form of physical interference with those rights. This included fencing off spring sources on the Meadow Canyon allotment, which excluded plaintiffs' livestock from the water owned by plaintiffs and the forage serviced by those waters (RT 76:8-77:1). The Forest Service fenced off certain meadows and spring sources (owned by plaintiffs)

---

[1] Plaintiffs, for purposes of this response, do not dispute the holding in *Casitas*; however, plaintiffs do not necessarily agree with its holding. From the plaintiffs' perspective, Tulare Lake was a much better reasoned decision than *Casitas*. In *Casitas*, Judge Wiese relies on Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 535 U.S. 302 (2002) in determining that his decision in Tulare Lake was incorrect with respect to whether a governmental interference with the use of water is a physical or per se taking. However, a moratorium on residential land development is a far cry from depriving persons of all or a portion of their vested water rights.

on the Table Mountain Allotment, and erected electric fences which excluded cattle from waters owned by the plaintiffs (RT 81:25-84:21). The interference by the United States with plaintiffs' ditch maintenance was well detailed in the first trial of this case in 1998. This included arresting and trying Mr. Hage for trying to maintain his ditches. These ditches had to be cleared in order to get the water to the places of beneficial use, which are plaintiffs' irrigated pastures (RT 121:12-20).

There is ample evidence in the record that a proliferation of willows, other riparian growth, and upland vegetation growth, pursuant to policies promoted by the Forest Service, along with plaintiffs' inability to maintain their irrigation ditches because of threats of prosecution and plaintiffs' financial inabilities to maintain those ditches, has resulted in a severe loss of water reaching plaintiffs' irrigated pastures. This is detailed in pages 6-9 of Plaintiffs' Post-Trial Brief.

## ARGUMENT

### A. Factually, *Hage* is clearly Distinguishable from *Casitas*

In *Casitas*, the government imposed diversion restrictions on plaintiff pursuant to the Endangered Species Act in order to protect the West Coast steel head trout. In *Casitas* there was none of the physical interference with the plaintiffs' water rights that we find in Hage, i.e., erecting physical barriers to prevent access to waters owned by the Hages; utilizing threats of prosecution and actual prosecution to prevent the Hages from maintaining their 1866 Act ditches; and promoting the growth of vegetation that physically prevented water from reaching the Hages' irrigated pastures. Not only is this a direct appropriation of private property, it is also a physical occupation of private property.

**B. Even if *Casitas* Applies to the Taking of Hages' Water Rights, The Penn Central Elements Are Satisfied**

Assuming, for the sake of argument only, that the taking of the Hages' water rights should be viewed as a regulatory, rather than a physical taking, the Penn Central test compels the conclusion that a taking occurred. As pointed out in *Casitas*, the Penn Central inquiry "turns in large part, albeit not exclusively, upon the magnitude of a regulations economic impact and the degree to which it interferes with legitimate property interests." (Citing *Lingle v. Chevron USA, Inc.*, 544 U.S. 528, 540 (2005).

Certainly, when the Hages purchased the Pine Creek Ranch in 1978, which included the water rights and range improvements (including wells), their investment backed expectations were that they would have access to, and the use of, their waters sufficient to operate a viable livestock business. The actions of the United States prevented their access to stock waters owned by them and dramatically reduced the amount of water they could apply to their irrigated pastures. The impact on the Hages ability to use their water for their livestock and irrigation was devastating, and they were forced to liquidate their herd and go out of business. The third prong of the Penn Central test, the character of the government's action is detailed in pages 4-11 of plaintiffs' Post-Trial Brief. The character of the government's actions was a deliberate pattern of conduct designed to put the Hages out of business and take their water and other property rights. The government was successful in doing just that.

## CONCLUSION

Plaintiffs respectfully submit that *Casitas* is not dispositive of any issues in Hage.

DATED: April 27, 2007

Respectfully submitted,

By:________________________

Lyman D. Bedford
**MCQUAID BEDFORD & VAN ZANDT LLP**
221 Main Street, 16th Floor
San Francisco, CA 94105
Telephone: (415) 905-0200
Facsimile: (415) 905-0202
Attorney of Record for the Hage Plaintiffs

Michael J. Van Zandt
Of Counsel

# CERTIFICATE OF SERVICE

At the direction of the Attorney of Record or his designee, on the date designated below, I served the within **RESPONSE TO SUPPLEMENTAL MEMORANDUM OF AMICI CURIAE NEVADA DEPARTMENT OF WILDLIFE, ET AL., REGARDING THE DECISION OF THE U.S. COURT OF FEDERAL CLAIMS IN CASITAS MUNICIPAL WATER DISTRICT V. UNITED STATES** on the interested parties in this action, as follows:

| | |
|---|---|
| Michael Wolz<br>Nevada Attorney General's Office<br>100 North Carson Street<br>Carson City, NV 89701-4717 | by first class mail |

Dated: May 1, 2007

Teresa Bechelli

Teresa Bechelli